## JAMES A. PHILLIPS v. JOHN F. PHILLIPS.

1. In an action to recover damages for overflowing lands of the plaintiff, a verdict for nominal damages only will not be set aside if the jury had reason to believe from the evidence that some part of the injury complained of was occasioned by an unlawful act of the defend-

ant, but that the damages resulting from such act bore no appreciable proportion to those actually sustained by the plaintiff and resulting from other causes.

2. The rule as to the amount of damages in such cases is, that the plaintiff is entitled to substantial compensation, and, in case of trivial injury, to merely nominal damages.

On rule to show cause why verdict should not be set aside.

The facts of the case and the grounds relied on for setting aside the verdict appear in the opinion of the court.

Argued before the CHIEF JUSTICE, and WOODHULL, DEPUE, and VAN SYCKEL, Justices.

For the rule, *Holt* and *Aitkin.*

Contra, *E. T. Green* and *J. Wilson.*

The opinion of the court was delivered by

WOODHULL, J. This is an action on the case to recover damages for overflowing certain lands of the plaintiff in the township of Lawrence, in the county of Mercer.

It was tried at the May Term, 1869, of the Mercer Circuit, before the Chief Justice, a verdict rendered for the plaintiff, and his damages assessed at six cents.

We are now asked by the plaintiff to set aside this verdict on three grounds :

1. Because the verdict was contrary to evidence.

2. Because the assessment of nominal damages by the jury was contrary to evidence, and inconsistent with a verdict of guilty against the defendant.

3. Because the assessment of nominal damages by the jury was contrary to the charge of the Chief Justice.

The injuries complained of are alleged to have been done between the 1st day of April, 1864, and the commencement of the suit on the 28th day of December, 1868.

The lands in question lie along the easterly side of a stream commonly known as Eight-mile-run, and between that and the Delaware and Raritan Canal.

Higher up, on the same stream, and between it and the canal, are the lands of the defendant, extending from the Trenton and Princeton turnpike, on the north, to what is called the guard-bank, on the south.

This bank reaches from the Eight-mile-run to the canal, and is a little over one-third of a mile below the turnpike. Between eight hundred and nine hundred feet below the turnpike is what the plaintiff and some of the witnesses designate as the left fork of Eight-mile-run, regarding it as a natural water-course, while the defendant and many witnesses speak of it as merely an artificial passage-way for water from Eight-mile-run through defendant's land, and as having been long known by such names as the Big Ditch, the Black Ditch, Bullock's Ditch—all indicating that it was not generally understood to be a natural branch of Eight-mile-run.

The water passing through this left fork or ditch is discharged into the canal, about ten chains above the guard-bank.

Across the mouth or head of this fork, where it leaves the Eight-mile-run, there is a stone dam, which was already there when the defendant bought the property, but not so high as it is now, the defendant having raised it eighteen inches in 1861.

Along the Collins line, which forms the westerly boundary of a part of defendant's land, there is a bank extending from the turnpike in a southerly direction to the Eight-mile-run, and thence to the stone dam.

This bank, as it originally stood, was thrown up by a former owner, but was made a foot higher by the defendant in 1861.

From the stone dam, extending about half way down to the guard-bank, was another bank along Eight-mile-run, which was not made in the first place by the defendant, but

which he raised a foot higher in 1861, as he did the other. This bank the defendant afterwards continued down to the guard-bank, commencing about the middle of August, 1868, and finishing some time in October in the same year.

From Eight-mile-run above the turnpike there is another ditch or water-course passing under the turnpike through a culvert, and thence down to the big ditch, or left fork.

This culvert the defendant obstructed about a year before the completion of his last bank.

Another culvert spoken of by the witnesses is the one through which the Eight-mile-run passes under the canal, something over a mile and a half below the turnpike.

· That the plaintiff has for several years past suffered much loss from the overflow of his lands on or near the Eight-mile-run cannot be doubted.

He alleges and has endeavored to prove that this loss was the direct and natural result of certain acts done by the defendant on his own land, these acts being—1. The obstructing of the upper culvert; 2. The building of the stone dam; 3. Increasing the height of the banks above and below the dam; and 4. Completing the embankment by extending it down to the guard-bank.

The jury must have believed that some part of the injury complained of was occasioned by these acts of the defendant, or by some one of them, else they could not have found him guilty at all.

They must also have been satisfied that the damages resulting from any act or acts of the defendant bore no appreciable proportion to those actually sustained by the plaintiff, and resulting from other causes.

The only question to be determined is, whether, having found the defendant guilty, the jury could, consistently with the evidence in the cause, and with the charge of the Chief Justice, assess against him merely nominal damages.

If the stream which passed through the upper culvert into the left fork, and the left fork itself, are not natural, but arti-

ficial channels, the defendant had clearly a right to obstruct or to close them entirely whenever he chose to do so.

The character of these streams, as to their being natural or artificial, was the subject of much discussion at the trial and on the argument here, and no doubt occupied a prominent place in the deliberations of the jury-room, the question whether they were natural water-courses or not having been distinctly submitted to the jury with proper instructions as to the bearing of that question on the issue in the cause. On this part of the case the Chief Justice charged the jury as follows : "As to the channels mentioned in the evidence, which run from Eight-mile-run, the defendant had no right to stop or obstruct them, or either of them, to the damage of the plaintiff, if you believe from the testimony that such channels are the natural beds or course of the water."

"These channels are well defined, and if, consequently, in your opinion the water coming down that run, either in time of floods or at the common height of the stream, passed off naturally in that direction, and thus avoided the land of the plaintiff, the defendant is responsible, if by his obstructions he has sent the water down upon the land of the plaintiff.

"But, on the other hand, if it shall appear to you that those channels are artificial—that is, made substantially by human labor—then the defendant had the right to obstruct them, and he is not responsible for any damage which such obstruction may have occasioned the plaintiff."

It may be inferred with some certainty, from the verdict rendered on the whole case, that the particular question thus submitted to the jury was determined by them adversely to the plaintiff.

Although the testimony bearing on this part of the case is, as might be expected, more or less conflicting, there is still enough in it to justify the jury in finding that neither of the streams or channels here referred to was a natural water-course ; and, having reached this conclusion, they would very properly disallow all damages claimed by the

plaintiff on the ground of any obstruction of these channels, or either of them, by the defendant.

3. The next ground of complaint against the defendant is his having raised the bank above and below the dam one foot higher than it was when he became the owner of the property.

It was contended on the part of the plaintiff, that the natural and necessary effect of this was to throw upon the plaintiff's land a greater volume of water than had been accustomed to flow there, and thus materially to increase the damage sustained by him, especially in times of flood.

One answer to this insistment was, that while the bank in question was raised to its present height as early as 1861, and has so continued ever since, nothing was ever heard of any increased or unusual flow of water upon the plaintiff's land until several years later; that if this effect had been produced by the raising of the bank, it must have been noticed very soon after this work was done, and that, therefore, the excess of water thrown down upon the plaintiff must have been owing to other causes than the raising of this bank by the defendant.

Another answer is, that just about the time when the plaintiff alleges that he first began to be annoyed and injured by an unusual flow of water down Eight-mile-run, and over his meadows and other land, a number of persons who owned farms higher up the stream began to improve them by draining, thus materially adding to the volume of water usually flowing down the run—an addition quite sufficient, it was said, to account for the greater quantity of water then and ever since thrown down upon the plaintiff.

Another answer is, that even if the raising of this bank did keep back the water in the run, so that it could not escape through the upper portion of the defendant's lands, no injury could have resulted from this to the plaintiff—at least, before August, 1868—because, up to that time, the water found a ready vent over the defendant's meadow, be-

tween the lower end of the raised bank and what is known as the guard-bank.

It was further urged on behalf of the defendant, that the injury done the plaintiff's land was occasioned partly by several unusually wet seasons; partly by the plaintiff's neg lect to ditch his land and to keep open ditches already dug, and partly by an unexplained obstruction of the lower culvert, the effect of which was to throw the water of the run back upon the plaintiff's land.

Condsidering these answers and arguments in the light of all the testimony, in the cause, they appear to me to be entitled to so much weight that, in view of them, the jury might very reasonably have concluded that the plaintiff's claim for damages on the third ground was not sustained by the evidence.

4. The fourth and last ground on which the plantiff presses his claim for damages in this case is the defendant's building a new bank—begun in August and finished in October, 1868—connecting the lower end of the old raised bank with the guard-bank. It appears to me not improbable that it was upon this last ground alone that the jury came to the conclusion that they ought to find a verdict for the plaintiff, but for no more than nominal damages. The Chief Justice had just said to them: "It seems to be 'obvious that all water which flows on the plaintiff's land must necessarily occasion damage to him. There is no reason in saying that because his land would be overflowed in the natural condition of that water, that no harm is done in augmenting such inundations. The larger the augmentation of water, it would seem the greater the injury would be by reason of such increase. It is a question for the good sense of the jury."

Now, the jury could not very well resist the conviction that by reason of this new bank some water must have been sent down upon the plaintiff, which, before that, would have flowed off in another direction. This was enough to entitle the plaintiff to a verdict.

But they may also have believed that land which had already become as worthless from repeated overflows, as that of the plaintiff appears to have been from his own description of it, was incapable of being injured, in any appreciable degree, by the additional water sent down upon it by the new bank, in the brief interval between its completion and the commencement of the suit ; and, believing this, their verdict could not properly be for more than nominal damages.

The rule as to the amount of damages in such cases is, " that the plaintiff is entitled to substantial compensation ; and, in case of trivial injury, or even without any actual injury, to merely nominal damages." 1 *Hill. on Torts* 608, § 18 ; *Sedg. Meas. Dam.* 44, 45, (*4th ed.*)

As the verdict in this case appears to me to be neither contrary to the evidence nor inconsistent with itself, nor with the charge of the Chief Justice, the rule to show cause ought, in my opinion, to be discharged.

Rule discharged.